**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**ALAN SCHOENBECK, et al.,**

**Plaintiffs,**

**v.**

**NCR CORPORATION PLAN ADMINISTRATION COMMITTEE,**

**Defendant.**

**CIVIL ACTION FILE**

**No. 1:24-CV-00765-SCJ**

# ORDER

Two matters appear before the Court. First, Plaintiffs' Motion to Strike. Doc. No. [24].[1] The Court **DENIES** as **MOOT** this Motion to Strike because it attacks a motion to dismiss, which is not a "pleading." See Fed. R. Civ. P. 12(f) (noting motions to strike only may attack "pleading[s]"); see also Fed. R. Civ. P. 7(a) (excluding motions to dismiss when defining "pleadings").

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

Second, Defendant's Motion to Dismiss. Doc. No. [16]. The Court **GRANTS IN PART AND DENIES IN PART** this Motion to Dismiss for the reasons below.

## I. BACKGROUND

Plaintiffs, "former employees of NCR," sued Defendant, the fiduciary charged to administer NCR's 401(k) plan, for overpaying Fidelity, the 401(k)'s "recordkeeper." Doc. No. [1], ¶¶ 15–16, 22, 52. Plaintiffs, as a putative class, sued under The Employment Retirement Income Security Act of 1974. Id. ¶¶ 35–41, 112 (citing 29 U.S.C. § 1104(a)).

Plaintiffs fear Defendant overpays Fidelity in three ways. See generally id. First, "float," in other words, the interest accrued on 401(k) contributions and withdrawals passing through "Fidelity's clearing account for 2-3 days." Id. ¶¶ 54–55. Fidelity retains this "float" because Defendant, Plaintiffs say, "has not tracked, monitored, [or] negotiated" the amount with Fidelity. Id. ¶ 55.

Second, "revenue sharing," which means Fidelity receives fees "tethered to the amount of assets in" the 401(k). Id. ¶ 56. According to Plaintiffs, Fidelity's fees could "grow to unreasonable levels if [401(k)] assets grow while the number

of participants, and thus the services provided, does not increase at a similar rate." Id.

Third, excessive "per-participant" fees because Defendant pays at least $42 for each 401(k) participant—even though, Plaintiffs allege, Fidelity charges "comparable" clients $25.36, $18.32, $7.58, and $4.74 "for the same services." Id. ¶¶ 45, 74, 88, 89. This purported bad deal with Fidelity results from, Plaintiffs again allege, Defendant's "fail[ure] to conduct [request for proposals] at reasonable intervals." Id. ¶ 65.

In its Motion to Dismiss, Defendant attacked each of Plaintiffs' claims—especially the excessive "per-participant" fees allegation. See generally Doc. No. [16]. And each party briefed the Motion to Dismiss. Docs. Nos. [23]; [27].

## II. LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Project Veritas v. Cable News Network, Inc., 121 F.4th 1267, 1274 (11th Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In other words, a complaint needs "more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

At this stage, a court "accept[s] the allegations in the complaint as true and make[s] all reasonable inferences for the plaintiff." Olhausen v. Arriva Med., LLC, No. 21-10366, 2024 WL 5181896, at *6 (11th Cir. Dec. 20, 2024). A court, however, can "consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." Johnson v. City of Atlanta, 107 F.4th 1292, 1300 (11th Cir. 2024) (footnote omitted).

And as applied to ERISA, a plaintiff can survive a motion to dismiss by presenting "'circumstantial evidence'—such as underperforming funds and high management fees—that suggests an imprudent process." Fleming v. Rollins, Inc., 655 F. Supp. 3d 1243, 1257 (N.D. Ga. 2023) (quoting Pizarro v. Home Depot, Inc., No. 1:18-CV-01566-WMR, 2019 WL 11288656, at *9–12 (N.D. Ga. Sept. 20, 2019)). In other words, low returns or high costs provide "an inference that [a defendant's] decision-making process . . . was imprudent." Pizarro, 2019 WL 11288656, at *4 (first citing Meiners v. Wells Fargo & Co., 898 F.3d 820, 822 (8th

Cir. 2018); then citing Henderson v. Emory Univ., 252 F. Supp. 3d 1344, 1351 (N.D. Ga. 2017)).

## III. ANALYSIS

### A. Fidelity Didn't Receive Float or Revenue Sharing

Plaintiffs' claims about float and revenue sharing must be dismissed because Fidelity returned any amount, if any, to Defendant. See, e.g., Doc. No. [16-6], 4 ("[Float] income was returned to the [401(k)] from Fidelity."); id. at 5 ("[Revenue sharing income] was returned to the [401(k)] as a credit to offset expenses."). Defendant first shared these facts with Plaintiffs when they sought administrative remedies. See Doc. No. [16-4], 8–9. Yet Plaintiffs ignored the facts when they appealed the administrative decision (Doc. No. [16-6], 4–5), sued Defendant (Doc. No. [1], ¶ 54), and opposed Defendant's Motion to Dismiss (Doc. No. [23], 18–21).

The Court, however, cannot ignore these facts from the administrative record. For one, this record is "central to [Plaintiffs'] claims" because the record examines Plaintiffs' claims against Defendant. Johnson, 107 F.4th at 1300 (footnote omitted). The record also answers the ultimate issue: How much did Defendant pay Fidelity through float and revenue sharing? Doc. No. [1], ¶ 54. Its

answer, again, is zero. See, e.g., Doc. No. [16-6], 4 ("[Float] income was returned to the [401(k)] from Fidelity."); id. at 5 ("[Revenue sharing income] was returned to the [401(k)] as a credit to offset expenses.").

For another, this record is "undisputed" because Plaintiffs never challenged its "authenticity." Johnson, 107 F.4th at 1300 (footnote omitted). Indeed, this record omits the only documents Plaintiffs questioned: Defendant's Annual Form 5500 and Annual Fee Disclosure. Doc. No. [1], ¶¶ 75–82.[2]

### B. Its Plausible Defendant Overpaid Fidelity as Recordkeeper

Plaintiffs' claim about high "per-participant" fees survive Defendant's motion to dismiss for two reasons. First, Plaintiffs alleged Fidelity charged "comparable" clients "for the same services" no more than $26 even though it charged Defendant $42. Id. ¶¶ 45, 74, 88, 89. Second, Plaintiffs alleged this price difference traces to Defendant's lapse in request for proposals. Id. ¶ 65.

To allege Defendant breached its duty of prudence, Plaintiffs must plausibly show (1) "a financial loss caused by" (2) Defendant's failure to

---

[2] The holding in Johnson forecloses Plaintiffs' remaining arguments the Court may not consider documents outside the pleadings. Compare 107 F.4th at 1300 (explaining exceptions to the general rule) with Doc. No. [23], 31–32 (highlighting the general rule while omitting its exceptions).

"prudently monitor, investigate, and evaluate" expenses. Pizarro v. Home Depot, Inc., 111 F.4th 1165, 1170 (11th Cir. 2024). Again, low returns or high costs provide "an inference that [a defendant's] decision-making process . . . was imprudent." Pizarro, 2019 WL 11288656, at *4 (first citing Meiners, 898 F.3d at 822; then citing Henderson, 252 F. Supp. 3d at 1351).

Plaintiff alleged both high costs and a flawed process leading to those high costs. Pizarro, 111 F.4th at 1176 ("So liability turns not only on an imprudent process, but also on that process resulting in an imprudent investment."). For one, Plaintiffs allege they overpaid by at least $26 annually for Fidelity to administer Defendant's 401(k). Doc. No. [1], ¶¶ 45, 74, 88, 89. This allegation, even if not "probable," is "plausible," Ashcroft, 556 U.S. at 678, because Plaintiffs contrast Defendant's payments to Fidelity with Fidelity payments from similarly sized and similarly capitalized 401(k)'s. See Doc. No. [1], ¶ 88 (referencing 401(k)'s with at least 12,000 participants and $1.8 billion assets because Defendant's 401(k) has roughly 16,000 participants and $2 billion assets).

For another, Plaintiffs allege these high costs were caused by Defendant's failure to "obtain competitive bids . . . for recordkeeping services since 2015." Doc. No. [1], ¶ 70. This lapse, according to Plaintiff, was not "reasonable." Id. ¶

65. This claim, coupled with that of high costs, creates "an inference that [Defendant's] decision-making process . . . was imprudent." Pizarro, 2019 WL 11288656, at *4 (first citing Meiners, 898 F.3d at 822; then citing Henderson, 252 F. Supp. 3d at 1351). To hold otherwise, Plaintiffs would need to prove their case before discovery.

## IV. CONCLUSION

For these reasons, the Court issues two orders. First, the Court **DENIES** as **MOOT** Plaintiff's Motion to Strike. Doc. No. [24]. Second, on Defendant's Motion to Dismiss (Doc. No. [16]), the Court **GRANTS IN PART** as to Plaintiffs' claims about float and revenue sharing, and **DENIES IN PART** as to Plaintiffs' claims about excessive "per-participant" fees.

**IT IS SO ORDERED** this 4th day of February, 2025.

Steve C. Jones

**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**