**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ALAN SCHOENBECK and JORGE MIRABAL, and individually, and on behalf of the NCR Savings Plan,<br>Plaintiffs,<br><br>v.<br><br>NCR CORPORATION PLAN ADMINISTRATION COMMITTEE,<br>Defendant. | Civil Action No. 1:24-cv-00765-SCJ<br><br>Hon. Steve C. Jones |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................3

I. The NCR Savings Plan....................................................................3

II. Plaintiffs and the Allegations in this Lawsuit ..................................8

LEGAL STANDARD...........................................................................11

ARGUMENT .......................................................................................11

I. The Proposed Class fails insofar as it seeks prospective relief because Plaintiffs lack Article III standing. ....................................11

II. Plaintiffs are not typical of the entire Proposed Class. .....................13

III. Plaintiffs and Counsel cannot fairly and adequately protect the interests of the Proposed Class.........................................................15

A. Plaintiffs cannot adequately protect the interests of the Proposed Class. ...................................................................15

i. As former participants, Plaintiffs cannot adequately protect the interests of current Plan participants. ...........15

ii. Plaintiffs' blind reliance on Counsel renders them inadequate representatives. ...........................................16

B. Counsel has not demonstrated that they can fairly and adequately protect the interests of the Proposed Class. ............19

IV. The Proposed Class definition is overbroad.....................................23

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amansac v. Midland Credit Mgmt.*,
No. 15-8798, 2022 U.S. Dist. LEXIS 194021 (D.N.J. Oct. 24, 2022)...............14

*Askew v. S. Pan ESOP*,
No. 1:18-CV-309-MHC, 2019 U.S. Dist. LEXIS 238959 (N.D. Ga. June 27, 2019) ....................22

*Barrett v. Pioneer Nat. Res. USA, Inc.*,
No. 17-cv-1579-WJM-NYW, 2018 U.S. Dist. LEXIS 135019 (D. Colo. July 26, 2018)....................15

*Bowen v. First Fam. Fin. Servs.*,
233 F.3d 1331 (11th Cir. 2000) ....................12

*Brown v. Electrolux Home Prods., Inc.*,
817 F.3d 1225 (11th Cir. 2016) ....................11

*Butterworth v. Quick & Reilly, Inc.*,
171 F.R.D. 319 (M.D. Fla. 1997) ....................18

*Cheng Xia Wang v. Shun Lee Palace Rest., Inc.*,
No. 17-CV-840 (VSB), 2023 U.S. Dist. LEXIS 57138 (S.D.N.Y. Mar. 31, 2023) ....................22

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*,
662 F.3d 913 (7th Cir. 2011) ....................21

*Danielson v. DBM, Inc.*,
No. 1:05-cv-2091-WSD, 2007 U.S. Dist. LEXIS 18609 (N.D. Ga. Mar. 15, 2007) ....................18

*Davidson v. Citizens Gas & Coke Util.*,
238 F.R.D. 225 (S.D. Ind. 2006) ....................17

*Davis v. FEC*,
554 U.S. 724 (2008)....................12

*Fennell v. Navient Sols., LLC*,
No. 6:17-cv-2083-Orl-37DCI, 2019 U.S. Dist. LEXIS 141194 (M.D. Fla. June 13, 2019) ........ 24

*Fuller v. Suntrust Banks*,
No. 1:11-CV-784-ODE, 2018 U.S. Dist. LEXIS 236238 (N.D. Ga. May 2, 2018) ........ 24

*Garcia de León v. N.Y.U.*,
No. 21 Civ 05005 (CM), 2022 U.S. Dist. LEXIS 110787 (S.D.N.Y. June 22, 2022) ........ 21

*Garthwait v. Eversource Energy Co.*,
No. 3:20-CV-00902(JCH), 2022 U.S. Dist. LEXIS 93641 (D. Conn. May 25, 2022) ........ 11, 12, 13

*Goers v. L.A. Ent. Grp., Inc.*,
No. 2:15-cv-412-FtM-99CM, 2017 U.S. Dist. LEXIS 2666 (M.D. Fla. Jan. 9, 2017) ........ 19

*Griffin v. Dugger*,
823 F.2d 1476 (11th Cir. 1987) ........ 11

*Guzman v. Bridgepoint Educ., Inc.*,
305 F.R.D. 594 (S.D. Cal. 2015) ........ 24

*Harmon v. Shell Oil Co.*,
No. 3:20-cv-00021, 2023 U.S. Dist. LEXIS 157163 (S.D. Tex. Sep. 6, 2023) ........ 23

*Hill v. T-Mobile USA, Inc.*,
No. 2:09-CV-1827-VEH, 2011 U.S. Dist. LEXIS 157669 (N.D. Ala. May 16, 2011) ........ 24

*Hillis v. Equifax Consumer Servs., Inc.*,
237 F.R.D. 491 (N.D. Ga. 2006) ........ 18

*Huang v. Trinet HR III Inc.*,
No. 8:20-cv-2293-VMC-TGW, 2022 U.S. Dist. LEXIS 192525 (M.D. Fla. Oct. 21, 2022) ........ 23

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
85 F.4th 1070 (11th Cir. 2023) ........ 24

*In re ING Groep, N.V. ERISA Litig.*,
749 F. Supp. 2d 1338 (N.D. Ga. 2010) ........ 11

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ........ 13

*Johnson v. Russell Invs. Tr. Co.*,
No. 22-21735-Civ, 2025 U.S. Dist. LEXIS 17611 (S.D. Fla. Jan. 31, 2025) ........ 1

*Kaplan v. Pomerantz*,
131 F.R.D. 118 (N.D. Ill. 1990) ........ 17

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) ........ 16, 17

*London v. Wal-Mart Stores, Inc.*,
340 F.3d 1246 (11th Cir. 2003) ........ 15

*Lopez v. Embry-Riddle Aeronautical Univ., Inc.*,
No. 6:22-cv-1580-PGB-LHP, 2024 U.S. Dist. LEXIS 205724 (M.D. Fla. Nov. 13, 2024) ........ 1

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 12

*Markson v. CRST Int'l, Inc.*,
No. 5:17-cv-01261-SB-SP, 2022 U.S. Dist. LEXIS 47768 (C.D. Cal. Feb. 24, 2022) ........ 14

*Mattson v. Milliman, Inc.*,
697 F. Supp. 3d 1109 (W.D. Wash. 2023) ........ 23

*McDonald v. Lab'y Corp. of Am. Holdings*,
No. 1:22CV680, 2025 U.S. Dist. LEXIS 155102 (M.D.N.C. Aug. 12, 2025) ........ 1, 9

*Mirabal v. NCR Corp.*,
No. 22-cv-4879-SCJ (N.D. Ga.) ........ 9, 23

*Monroe v. City of Charlottesville*,
579 F.3d 380 (4th Cir. 2009) ........ 17

*Naylor v. BAE Sys., Inc.*,
No. 1:24-cv-00536, 2024 U.S. Dist. LEXIS 160188 (E.D. Va. Sep. 5, 2024) ....2

*Pizarro v. Home Depot, Inc.*,
No. 1:18-cv-01566-WMR, 2020 U.S. Dist. LEXIS 206774 (N.D. Ga. Sep. 21, 2020) ....23

*Ramos v. Banner Health*,
325 F.R.D. 382 (D. Colo. 2018) ....23

*Ret. Sys. v. ANZ Sec., Inc.*,
582 U.S. 497 (2017) ....23

*Sanchez v. Velocity Invs., L.L.C.*,
No. 1:15-CV-3096-LMM-WEJ, 2015 U.S. Dist. LEXIS 193681 (N.D. Ga. Dec. 11, 2015) ....16, 17

*Savage v. Sutherland Glob. Servs., Inc.*,
747 F. Supp. 3d 578 (W.D.N.Y. 2024) ....12, 13

*Spann v. AOL Time Warner, Inc.*,
219 F.R.D. 307 (S.D.N.Y. 2003) ....14

*Spotswood v. Hertz Corp.*,
No. RDB-16-1200, 2019 U.S. Dist. LEXIS 20536 (D. Md. Feb. 7, 2019) ....15

*Thole v. U.S. Bank N.A.*,
590 U.S. 538 (2020) ....11

*Vision Constr. Ent Inc. v. Argos Ready Mix LLC*,
No. 3:15cv534-MCR-HTC, 2019 U.S. Dist. LEXIS 234569 (N.D. Fla. Nov. 7, 2019) ....18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....3, 11, 23

*Waldner v. Natixis Inv. Managers, L.P.*,
No. 21-cv-10273-LTS, 2023 U.S. Dist. LEXIS 86177 (D. Mass. Mar. 24, 2023) ....13

*Wein v. Master Collectors*,
No. 1:94-CV-2694-JOF, 1995 U.S. Dist. LEXIS 21622 (N.D. Ga. Aug. 15, 1995) .......... 18, 20

*Wood v. Prudential Ret. Ins. & Annuity Co.*,
No. 3:15-cv-1785 (VLB), 2017 U.S. Dist. LEXIS 123128 (D. Conn. Aug. 4, 2017) .......... 16

*Young v. Magnequench Int'l, Inc.*,
188 F.R.D. 504 (S.D. Ind. 1999) .......... 19

**RULES**

Fed. R. Civ. P. 23 .......... passim

**STATUTES**

29 U.S.C. § 1001, *et seq.* .......... 9

29 U.S.C. § 1113 .......... 23, 24

## INTRODUCTION

Plaintiffs Jorge Mirabal ("Mirabal") and Alan Schoenbeck ("Schoenbeck") are former employees of NCR Corporation ("NCR")[1] who were terminated due to unsatisfactory performance. Plaintiffs sought legal counsel regarding potential claims arising from their termination. Significantly, neither had concerns about the NCR Savings Plan[2] (the "Plan") or the fees they paid when they were Plan participants. Nevertheless, Mirabal and Schoenbeck now find themselves figureheads for a lawsuit challenging the reasonableness of the recordkeeping fees charged to participants in the Plan—extending from long before Mirabal's participation in the Plan to long after both were terminated from NCR. Indeed, they are the latest plaintiffs in a series of dozens of similar cases filed by their Counsel ("Counsel") asserting nearly identical allegations against companies across the country.[3]

---

[1] Effective October 16, 2023, NCR Corporation was renamed NCR Voyix Corporation. Ex. 1, at NCR-Schoenbeck_00000146.

[2] The NCR Savings Plan was renamed the NCR Voyix Savings Plan, effective January 1, 2024. *Id.*

[3] *See, e.g.*, *McDonald v. Lab'y Corp. of Am. Holdings*, No. 1:22CV680, 2025 U.S. Dist. LEXIS 155102, at *65 (M.D.N.C. Aug. 12, 2025) (granting judgment against plaintiffs on breach of fiduciary duty claim in excessive fee lawsuit filed by Counsel); *Lopez v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:22-cv-1580-PGB-LHP, 2024 U.S. Dist. LEXIS 205724, at *1-2 (M.D. Fla. Nov. 13, 2024) (granting summary judgment in favor of defendant on breach of fiduciary duty claim in excessive fee lawsuit filed by Counsel); *Johnson v. Russell Invs. Tr. Co.*, No. 22-21735-Civ, 2025 U.S. Dist. LEXIS 17611, at *53 (S.D. Fla. Jan. 31, 2025) (granting summary judgment in favor of defendant on breach of fiduciary duty claim in

Plaintiffs seek to certify a class of "[a]ll persons who were participants in or beneficiaries of the NCR Savings Plan from December 13, 2016, through the present" ("Proposed Class"). Plaintiffs' Motion claims that certification is appropriate because this lawsuit is no "different" from dozens of other "excessive fee" type lawsuits (many of which were filed by their Counsel). But Plaintiffs fail to address several key reasons why the facts are, in fact, "different" here, and class certification cannot—and should not—be rubber-stamped.

First, as former participants in the Plan, Plaintiffs lack standing to pursue prospective, equitable relief. Second, thousands of Proposed Class members signed class action waivers as a condition of employment, including Mirabal but not Schoenbeck. Thus, neither Plaintiff is "typical" of the entire Proposed Class. Third, Plaintiffs and Counsel cannot adequately represent the interests of the Proposed Class in this lawsuit. Fourth, and finally, even if this Court is inclined to certify a class, the class definition proposed by Plaintiffs is overbroad because the class period extends more than six years prior to the filing of this lawsuit. Additionally, the Proposed Class includes thousands of putative class members who signed class

---

excessive fee lawsuit filed by Counsel); *Naylor v. BAE Sys., Inc.*, No. 1:24-cv-00536 (AJT/WEF), 2024 U.S. Dist. LEXIS 160188, at *22 (E.D. Va. Sep. 5, 2024) (granting motion to dismiss claim for breach of fiduciary duty based on excessive recordkeeping fees for failure to state a plausible claim for imprudence).

action waivers barring them from participating in this lawsuit. For all these reasons, set forth in more detail below, the Motion should be denied.

## BACKGROUND

"A party seeking class certification must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Frequently, the rigorous analysis required "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351. Because Plaintiffs devote several pages of their Motion setting out their theory of the case (Mot. at 3-14), Defendant sets forth relevant facts about the background of this litigation here.

### I. The NCR Savings Plan

NCR is a technology company offering software solutions, services, and hardware products primarily to the retail, hospitality (i.e., restaurant), and digital banking industries.[4] The NCR Savings Plan Administrative Committee ("Committee") is the named fiduciary responsible for oversight and administration of the Plan.[5] During the relevant period, members of the Committee generally included senior employees with experience in human resources, employee benefits,

---

[4] *Investors,* NCR Corporation Form 10-K, for the Fiscal Year Ended December 31, 2018, p. 2, WWW.INVESTOR.NCRVOYIX.COM, https://investor.ncr.com/static-files/6eb19479-4e54-40c7-9618-be042eab7031 (last visited Nov. 7, 2025).

[5] Ex. 2, at NCR Schoenbeck_00014109.

and/or finance.[6] The Committee meets "from time to time to review Plan administrative matters" and maintains records of Committee meetings.[7] Members received training when they joined the Committee, which was supplemented with additional annual training, as well as periodic updates from outside counsel, including training on recordkeeping fees.[8]

Committee members worked closely with the Plan's recordkeeper, Fidelity Investments Institutional Operations Co., LLC ("Fidelity").[9] The Committee regularly monitored both the services provided by Fidelity, as well as the total amount paid to Fidelity for its recordkeeping and other administrative and consulting services.[10] Fidelity disclosed both direct and indirect compensation received, along with other fees related to the Plan.[11] Plan participants received annual participant disclosures[12] and quarterly participant statements, which disclosed the recordkeeping and administrative fees deducted from their accounts.[13]

---

[6] Ex. 2, at NCR-Schoenbeck_00014110-112; Ex. 16, Deposition of Steve Tancred ("Tancred Dep.") 14:14-22.

[7] Ex. 2, at NCR Schoenbeck_00014113-114; Ex. 16, Tancred Dep. 18:1-3; Ex. 17, Deposition of Pat Carroll ("Carroll Dep.") 34:7-35:7.

[8] Ex. 15, Deposition of Doug Stover ("Stover Dep.") 18:9-20:6; Ex. 16, Tancred Dep. 15:4-22, 18:9-17; Ex. 17, Carroll Dep. 9:17-25;14:13-23; 15:11-16:10.

[9] Ex. 18, Deposition of Ryan Gamache ("Gamache Dep.") 32:5-9.

[10] *See, e.g.*, Ex. 4, at NCR-Schoenbeck_00006844; Ex. 16, Tancred Dep. 34:18-35:6.

[11] *See, e.g.*, Ex. 5, at NCR-Schoenbeck_00006098–106.

[12] Ex. 8, at NCR-Schoenbeck_00005842.

[13] Ex. 10, at NCR-Schoenbeck_00006404; Ex. 12, at NCR-Schoenbeck_00006316; Ex. 19, Schoenbeck Dep. 63:5-65:19, 72:21-73:4; Ex. 20, Mirabal Dep. 67:3-68:8.

The Committee prioritized securing the best possible recordkeeping fees for participants.[14] Members of the Committee had "constant conversations" with Fidelity about both recordkeeping fees and all fees paid by the Plan and its participants.[15] Committee members regularly benchmarked fees by reviewing industry publications, as well as data from other plans while conducting diligence for mergers and acquisitions.[16] The Committee also engaged industry experts to benchmark the reasonableness of recordkeeping fees based on the experts' extensive databases.[17]

The Committee conducted a formal RFP process in 2015 with the assistance of an independent consultant, Hager Strategic, Inc. ("Hager").[18] Of the three providers who submitted bids to serve as recordkeepers for the Plan, Fidelity had the lowest estimated total annual ongoing defined contribution administration fee.[19] Fidelity was ultimately selected and retained as the Plan's recordkeeper with a five-year contract beginning in 2016 and extending through December 2020.[20] This contract established a base recordkeeping fee of $45 per participant per year.[21]

---

[14] Ex. 17, Carroll Dep. 27:1-25; 28:7-19; 39:17-40:9.
[15] Ex. 17, Carroll Dep. 27:1-11; Ex. 18, Gamache Dep. 32:16-17; 34:8-10.
[16] Ex. 15, Stover Dep. 62:14-23.
[17] *See, infra*, at pp. 6-7; Ex. 17, Carroll Dep. 11:17-22.
[18] Ex. 17, Carroll Dep. 30:25-31:3.
[19] Dkt. 16-4 at pp. 2-3.
[20] Ex. 3, at NCR-Schoenbeck_00006804.
[21] *Id.*

Before the contractual period expired, the Committee began negotiating with Fidelity to seek lower recordkeeping fees for the renewed contract.[22] Committee members pushed Fidelity to take into account the total compensation paid to Fidelity and further reduce the core recordkeeping fee.[23] Once Fidelity informed the Committee the recordkeeping fee was "the lowest they could go," in August 2019, the Committee engaged Hager to assess the competitiveness of Fidelity's then-current and proposed fee structures.[24] While the Committee was not required to conduct a full RFP, they "kept the door open to doing an RFP" if the results of the benchmarking were not satisfactory.[25]

Hager benchmarked Fidelity's proposed renewal recordkeeping fees against a peer group of plans with 10,000 or more participants "with a comparable scope of services" to Fidelity's services for the Plan.[26] Hager's analysis found that Fidelity's proposed base recordkeeping fee was below the peer group average of $50.20 and within the market range of $29 to $74.[27] Ultimately, NCR and Fidelity renewed their agreement, which included transitioning the Plan's managed account services to Fidelity and reducing the Plan's base recordkeeping fee from $45 to $42 per

[22] Ex. 15, Stover Dep. 79:3-80:6.
[23] Ex. 15, Stover Dep. 71:6-22; 87:17-88:7; 94:7-17.
[24] Ex. 6, at NCR-Schoenbeck_00005719.
[25] Ex. 15, Stover Dep. 74:4-22; 90:5-91:6; Ex. 16, Tancred Dep. 35:7-24.
[26] Ex. 6, at NCR Schoenbeck_00005729; Ex. 15, Stover Dep. 68:10-18, 69:11-23; Ex. 16, Tancred Dep. 48:7-49:20; 51:6-19.
[27] Ex. 6, at NCR Schoenbeck_00005729.

participant per year.[28] The renewed Fidelity agreement was for a five-year contractual period, which was scheduled to expire on December 31, 2024.[29]

In 2022, OneDigital Investment Advisors ("OneDigital") conducted an all-in fee analysis of the Plan, which analyzed the Plan's all-in fees (including the Plan's recordkeeping fees, investment management fees, revenue sharing, and consulting service fees) and benchmarked the all-in fees against industry fee datasets from Deloitte and BrightScope.[30] This analysis showed that the Plan's all-in fees were lower than at least 90 percent of the plans in either of the datasets.[31]

In 2023, the Committee engaged in ongoing discussions with Fidelity regarding recordkeeping fees in anticipation of the decrease in participant count resulting from NCR's forthcoming separation into NCR Atleos and NCR Voyix.[32] Fidelity initially proposed increasing the recordkeeping fee from $42 to $45 per participant[33] but set the fee at $43 per participant per year for 2024.[34]

---

[28] Ex. 6, at NCR Schoenbeck_00005729.
[29] Ex. 6, at NCR Schoenbeck_00005719.
[30] Ex. 16, Tancred Dep. 57:13-58:8; Dkt. 16-4, at 5-6.
[31] Ex. 15, Stover Dep. 97:23-98:5; Dkt. 16-4, at 5-6.
[32] Ex. 18, Gamache Dep. 20:1-17; 32:10-17, 34:3-35:17. A ten percent increase or decrease in participants triggers a reevaluation of the recordkeeping fees, pursuant to the agreement with Fidelity. Ex. 18, Gamache Dep. 45:5-15.
[33] *See* Ex. 15, Stover Dep. 101:1-20; 105:1-18.
[34] Ex. 9, at NCR-Schoenbeck_00005881.

## II. Plaintiffs and the Allegations in this Lawsuit

Plaintiffs are former NCR employees who were both terminated for performance issues.[35] Schoenbeck was employed as a field engineer for NCR until his termination on July 31, 2020.[36] Mirabal was employed as a territory account manager for NCR from October 2021 until his termination July 27, 2022.[37] Both Plaintiffs reached out to Counsel seeking to file a lawsuit against NCR regarding what they believed was alleged wrongful termination.[38]

Schoenbeck and Mirabal are both former participants in the Plan.[39] Schoenbeck began contributing to the Plan as soon as he was eligible, taking advantage of the generous company match.[40] When they participated in the Plan, Plaintiffs regularly reviewed their account statements, which disclosed the $42-45 recordkeeping fee they paid to Fidelity.[41]

---

[35] Ex. 13, at NCR-Schoenbeck_6613; Ex. 14, at NCR-Schoenbeck_00006674–76.
[36] Ex. 14, at NCR-Schoenbeck_00006674–76.
[37] Ex. 13, at NCR-Schoenbeck_00006590, 6613.
[38] Ex. 19, Schoenbeck Dep. 42:23-43:1; 45:9-12; 46:10-13; Ex. 20, Mirabal Dep. 44:17-22; 47:7-10.
[39] Compl. ¶ 22. Although Schoenbeck alleged he was a current Plan participant as of Feb. 21, 2024, his participant statements reflect that he terminated his account and withdrew all assets on Jan. 31, 2024, before the filing of the Complaint. *See* Ex. 11, at NCR-Schoenbeck_00006561 (reflecting complete withdrawal of assets from plan on 1/31/2024 and ending balance of $0 for first quarter of 2024); Ex. 19, Schoenbeck Dep. 88:19-22.
[40] Ex. 19, Schoenbeck Dep. 49:23-50:14.
[41] Ex. 19, Schoenbeck Dep. 60:3-65:13; Ex. 20, Mirabal Dep. 65:12-66:4; 67:14-68:8; 69:7-14.

Plaintiffs did not have issues with the Plan, or the recordkeeping fees they paid, until speaking with their Counsel.[42] Nevertheless, Plaintiffs now contend the Committee breached its fiduciary duty of prudence under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA") by allowing Fidelity to charge Plan participants too much for recordkeeping services. (Mot. at 14.) Relying on their expert witness Ty Minnich, Plaintiffs argue that Plan participants should have paid "no more than $30 per year" for recordkeeping during the alleged Class Period. (Mot. at 9.)[43]

Plaintiffs first sued NCR in December 2022. *Mirabal v. NCR Corp.*, No. 22-cv-4879-SCJ (N.D. Ga.), Dkt. 1 ("*Mirabal*"). Plaintiffs alleged the fees paid to Fidelity were excessive based on amounts paid for: (1) float, (2) revenue sharing, and (3) per-participant fees. (*Mirabal*, Dkt. 1, ¶¶ 44-47.) The Court dismissed the *Mirabal* lawsuit because Plaintiffs failed to exhaust the Plan's mandatory claim and appeal procedure before suing. (*Mirabal*, Dkt. 50 at 3-7.)

For their administrative claim, Plaintiffs submitted a two-page cover letter, with no factual support, and simply attached a copy of the *Mirabal* Complaint. (Dkt. 16-3, Ex. A.) Despite multiple invitations, Plaintiffs did not request or submit any

---

[42] Ex. 19, Schoenbeck Dep. 65:20-66:3; Ex. 20, Mirabal Dep. 49:19-50:6.

[43] Other courts have found Ty Minnich's opinions on recordkeeping fees to have "limited probative value" when subjected to cross examination. *See McDonald*, 2025 U.S. Dist. LEXIS 155102, at *14-15 ("[T]his Court finds that Minnich's expert testimony . . . has limited probative value.").

other documents to support their administrative claim.[44] In August 2023, the Committee Delegates denied Plaintiffs' administrative claim after a full and fair review. (Dkt. 1 ("Compl.") ¶ 26.) The denial letter explained that any amount of float or revenue sharing collected was returned to the Plan and used to offset expenses. (Dkt. 16-4, Ex. B.) In support of their appeal, Plaintiffs submitted a six-page letter reiterating many of the same arguments in their *Mirabal* Complaint, including their arguments about float and revenue sharing. (Dkt. 16-5, Ex C.) The Committee denied Plaintiffs' appeal after a full and fair review. (Compl. ¶ 26.)

After Plaintiffs' administrative claim and appeal were denied, on February 21, 2024, Plaintiffs filed the instant lawsuit. (Compl.) Plaintiffs again alleged that the fees paid to Fidelity are excessive based on amounts paid for: (1) float, (2) revenue sharing, and (3) per-participant fees. (Dkt. 29 at 2-3.) The Court dismissed Plaintiffs' claims regarding float and revenue sharing. (Dkt. 29 at 5, 8.) Plaintiffs' only remaining claim is about the allegedly excessive per-participant recordkeeping fees. (Dkt. 29 at 8.) Plaintiffs seek broad relief, including restoration of all losses to the Plan, removal of fiduciaries, an injunction preventing future ERISA violations, reformation of the Plan to obtain bids for recordkeeping and to pay only reasonable recordkeeping expenses, and an award of attorneys' fees and costs. ("Prayer for Relief," (Compl. at pp. 37-38).)

---

[44] Appendix B, Decl. of Millie Bennett ¶¶ 6-7.

## LEGAL STANDARD

"All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016). For this reason, a plaintiff seeking class certification bears the burden of proving the proposed class meets the requirements of Rule 23. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. And he must do such with evidence: "Rule 23 does not set forth a mere pleading standard." *Id.*

## ARGUMENT

### I. The Proposed Class fails insofar as it seeks prospective relief because Plaintiffs lack Article III standing.

"[A]ny analysis of class certification must begin with the issue of standing . . . ." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *see Garthwait v. Eversource Energy Co.*, No. 3:20-CV-00902(JCH), 2022 U.S. Dist. LEXIS 93641, at *12 (D. Conn. May 25, 2022) (noting in ERISA excessive fee class action that "at least one named plaintiff must demonstrate that she or he is likely to incur such harm."). Under ERISA, plaintiffs must have both statutory and constitutional standing. *See In re ING Groep, N.V. ERISA Litig.*, 749 F. Supp. 2d 1338, 1345 (N.D. Ga. 2010); *Garthwait*, 2022 U.S. Dist. LEXIS 93641, at *14-15 (noting participants must show both statutory standing under ERISA, as well as Article III standing for prospective relief); *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("There is no

ERISA exception to Article III."). Constitutional standing requires injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted). "A plaintiff has standing to seek declaratory or injunctive relief only when he alleges facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bowen v. First Fam. Fin. Servs.*, 233 F.3d 1331, 1340 (11th Cir. 2000) (internal quotation marks omitted).

Because Plaintiffs are former Plan participants, they face no danger of future injury or potential harm from the recordkeeping fees presently charged or any other current or future aspect of Plan administration.[45] *See Savage v. Sutherland Glob. Servs., Inc.*, 747 F. Supp. 3d 578, 589-90 (W.D.N.Y. 2024) (holding "Plaintiffs lack Article III standing to seek prospective relief" in class action because "none of Plaintiffs are still enrolled in the Plan" and "thus are not in danger of any future injury from the selection of ADP as recordkeeper"). Therefore, they lack standing to seek prospective relief on behalf of the Plan. *Garthwait*, 2022 U.S. Dist. LEXIS 93641, at *24 (holding plaintiffs lacked standing to seek prospective injunctive relief in ruling on motion for class certification). And because Plaintiffs lack standing to seek prospective injunctive relief, the Proposed Class fails insofar as it seeks

[45] Ex. 19, Schoenbeck Dep. 102:5-8; Ex. 20, Mirabal Dep. 86:16-87:17.

prospective relief. *See, e.g.*, *Savage*, 747 F. Supp. 3d at 590 (holding proposed class failed insofar as it sought prospective relief because plaintiffs lacked standing to seek prospective relief); *Garthwait*, 2022 U.S. Dist. LEXIS 93641, at *47-48 (denying class certification to the extent plaintiff sought to certify a class pursuing injunctive relief for lack of standing and limiting class only to claims for retrospective relief); *Waldner v. Natixis Inv. Managers, L.P.*, No. 21-cv-10273-LTS, 2023 U.S. Dist. LEXIS 86177, at *43 (D. Mass. Mar. 24, 2023) (denying class certification as to prospective injunctive relief where former participant did not have standing to bring claims for prospective relief), *R. & R. adopted*, 2023 U.S. Dist. LEXIS 84436 (D. Mass. May 5, 2023).

## II. Plaintiffs are not typical of the entire Proposed Class.

"[A] proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009). Beginning in 2018, NCR generally required new employees to sign Class Action Waivers as a condition of accepting employment.[46] These Class Action Waivers extend to both "*any* controversy or claim arising out of or with respect to your employment with NCR" and "*any* claims that you may have or assert against

[46] Decl. of Millie Bennett ¶ 2; *see, e.g.*, Ex. 13, at NCR-Schoenbeck_00006600-6601.

any NCR employees, officers, directors, stockholders, or agents, its divisions, subsidiaries, affiliated corporations, limited partnerships, predecessors, successors and assigns."[47] Mirabal executed one of these Class Action Waivers, expressly waiving "any right with respect to any covered claims to submit, initiate, or participate as a plaintiff, claimant or member in a class action or collective action, regardless of whether the action is filed in arbitration or in court."[48] This unique defense precludes a finding of typicality for Mirabal. *See Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 318 (S.D.N.Y. 2003) (denying class certification where individualized issues, such as members who signed releases, precluded a finding of typicality).

Conversely, because Schoenbeck did not sign a Class Action Waiver, he is not typical of the thousands of putative class members who did.[49] *Amansac v. Midland Credit Mgmt.*, No. 15-8798, 2022 U.S. Dist. LEXIS 194021, at *15-17 (D.N.J. Oct. 24, 2022) (collecting cases denying class certification where court found plaintiff who did not sign or opted out of an arbitration agreement was not typical of putative class members subject to agreements); *Markson v. CRST Int'l,*

---

[47] Ex. 13, at NCR-Schoenbeck_00006600.

[48] Ex. 13, at NCR-Schoenbeck_00006600-6604; Ex. 20, Mirabal Dep. 31:19-35:25 (verifying Mirabal read and signed employment agreement, which included class action waiver).

[49] Based on a review of data identifying Plan participants between 2017-2023, at least 3,500 individuals were hired after January 2018 and may be subject to Class Action Waivers. Decl. of Millie Bennett ¶ 4.

*Inc.*, No. 5:17-cv-01261-SB-SP, 2022 U.S. Dist. LEXIS 47768, at *17 (C.D. Cal. Feb. 24, 2022) (finding plaintiffs who opted out of settlement were not typical or adequate representatives of class where nearly all members were subject to a release in the settlement); *Spotswood v. Hertz Corp.*, No. RDB-16-1200, 2019 U.S. Dist. LEXIS 20536, at *33 (D. Md. Feb. 7, 2019) (determining plaintiff could not meet the typicality requirement because he did not sign an arbitration agreement while other putative class members did).

## III. Plaintiffs and Counsel cannot fairly and adequately protect the interests of the Proposed Class.

### A. Plaintiffs cannot adequately protect the interests of the Proposed Class.

A class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must undertake "a stringent and continuing examination of the adequacy of representation by the named class representative[] at all stages of the litigation where absent members will be bound by the court's judgment." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003). This requirement "is especially great when, as in this case, the attorney's fees will 'far exceed[]' the class representative's recovery." *Id.*

#### *i. As former participants, Plaintiffs cannot adequately protect the interests of current Plan participants.*

For the reasons stated in Section I, *supra*, as former participants, Plaintiffs are inadequate because they have no stake in the outcome of this litigation for current Plan participants. *Barrett v. Pioneer Nat. Res. USA, Inc.*, No. 17-cv-1579-WJM-

NYW, 2018 U.S. Dist. LEXIS 135019, at *11-12 (D. Colo. July 26, 2018) (finding former plan participant inadequate to serve as class representative where he lacked standing to seek prospective equitable relief on behalf of current plan participants); *Wood v. Prudential Ret. Ins. & Annuity Co.*, No. 3:15-cv-1785 (VLB), 2017 U.S. Dist. LEXIS 123128, at *16 (D. Conn. Aug. 4, 2017) (finding plaintiff inadequate where she was unable to seek prospective injunctive relief and could not persuade the court that "injunctive relief would never advance the interests of any class member or subclass").

*ii. Plaintiffs' blind reliance on Counsel renders them inadequate representatives.*

A proposed class representative is inadequate if they have "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987). The Court must rigorously analyze "whether [proposed class representatives are] capable of making independent decisions" in the interest of the class. *Sanchez v. Velocity Invs., L.L.C.*, No. 1:15-CV-3096-LMM-WEJ, 2015 U.S. Dist. LEXIS 193681, at *12 (N.D. Ga. Dec. 11, 2015) (citation omitted); *Kirkpatrick*, 827 F.2d at 727 ("[A] potential class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives.") (internal quotation

marks omitted).[50] An informed class representative prevents "vesting unbridled discretion in the class attorney and effectively anointing the class attorney as the class representative." *Sanchez*, 2015 U.S. Dist. LEXIS 193681, at *11-12.

Both Plaintiffs confirmed they did nothing to verify the allegations in the Complaint, despite having access to their Plan participant statements.[51] Instead, Plaintiffs relied on Counsel, testifying that their concerns about the Plan's allegedly "excessive" recordkeeping fees only came from Counsel.[52] Both Plaintiffs testified that the annual recordkeeping fee was more than $100,[53] even though this figure is flatly contradicted by numerous documents, including their own participant statements.[54] And Plaintiffs deferred entirely to Counsel on what amount could be a reasonable recordkeeping fee.[55] Moreover, Mirabal does not seem to understand the

---

[50] *See also Monroe v. City of Charlottesville*, 579 F.3d 380, 385 (4th Cir. 2009) (explaining that to be an adequate class representative, an individual must demonstrate (among other things) sufficient interest in and knowledge of the case to ensure they "are not simply lending their names to a suit controlled entirely by the class attorney"); *Davidson v. Citizens Gas & Coke Util.*, 238 F.R.D. 225, 229 (S.D. Ind. 2006) (noting that class representatives are "required to be more than window dressing or puppets for class counsel") (citing *Kirkpatrick*, 827 F.2d at 727); *Kaplan v. Pomerantz*, 131 F.R.D. 118, 121 (N.D. Ill. 1990) ("A plaintiff whose knowledge is so wanting that [he] appears to be no more than a pawn of attorneys who seek a large fee award may be an inadequate class representative.").

[51] Ex. 19, Schoenbeck Dep. 69:4-7; Ex. 20, Mirabal Dep. 54:5-18; 58:23-25.

[52] Ex. 19, Schoenbeck Dep. 65:20-66:3; Ex. 20, Mirabal Dep. 72:14-73:10.

[53] Ex. 19, Schoenbeck Dep. 58:14-59:4; Ex. 20, Mirabal Dep. 53:24-54:21.

[54] Ex. 8, at NCR-Schoenbeck_00006527; Ex. 10, at NCR-Schoenbeck_00006313; *see* supra, Background, Section I.

[55] Ex. 19, Schoenbeck Dep. 66:4-15; 91:2-7; 95:17-22; Ex. 20, Mirabal Dep. 54:15-55:7.

allegations in this case at all. Although there are *no* allegations that NCR profited or retained any of these supposed "excessive fees" paid to Fidelity, Mirabal claims this lawsuit is about how **NCR** was "being greedy."[56]

Because of Plaintiffs' complete deferral to Counsel on the basic, verifiable facts underlying their claims, they are unable to serve as a check against the potentially competing interests of Counsel and inadequate to serve as class representatives. *See, e.g.*, *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 502 (N.D. Ga. 2006) (finding plaintiff inadequate representative where he was unfamiliar with specific allegations forming the basis of claims); *Wells*, 2013 U.S. Dist. LEXIS 176896, at *30-31 (same); *Danielson v. DBM, Inc.*, No. 1:05-cv-2091-WSD, 2007 U.S. Dist. LEXIS 18609, at *21-23 (N.D. Ga. Mar. 15, 2007) (same); *Vision Constr. Ent Inc. v. Argos Ready Mix LLC*, No. 3:15cv534-MCR-HTC, 2019 U.S. Dist. LEXIS 234569, at *33-34 (N.D. Fla. Nov. 7, 2019) (same); *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 323 (M.D. Fla. 1997) (same); *Wein v. Master Collectors*, No. 1:94-CV-2694-JOF, 1995 U.S. Dist. LEXIS 21622, at *12 (N.D. Ga. Aug. 15, 1995) (finding plaintiff inadequate where he "does not understand even [his] own claim, much less that of the putative class as a whole, and [he] has abandoned the prosecution of this claim entirely to [his] attorneys.").

---

[56] Ex. 20, Mirabal Dep. 49:19-50:3.

B. Counsel has not demonstrated that they can fairly and adequately protect the interests of the Proposed Class.

Class Counsel must also be able to "fairly and adequately" protect the interests of the Proposed Class. Fed. R. Civ. P. 23(a)(4). This inquiry into Class Counsel's adequacy is "rooted in the desire to assure due process of law to the unnamed class members." *Goers v. L.A. Ent. Grp., Inc.*, No. 2:15-cv-412-FtM-99CM, 2017 U.S. Dist. LEXIS 2666, at *11 (M.D. Fla. Jan. 9, 2017). The Court "must consider" "(i) the work counsel has done in identifying or investigating potential claims in the action…" Fed. R. Civ. P. 23(g)(1)(A)(i). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Defendant does not challenge the credentials or experience of Counsel. However, Counsel's conduct in this litigation calls into question whether they can fairly and adequately represent the interests of the Proposed Class. *See Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 508 (S.D. Ind. 1999) ("In addition to an attorney's experience in prior litigations, the court may also examine the attorney's conduct in the putative class action before the court.").

First, both Plaintiffs failed to timely appear for their properly noticed depositions.[57] Despite having weeks of notice, Counsel failed to apprise Mirabal

[57] Appendix A, Decl. of Michelle Jackson; Ex. 19, Schoenbeck Dep. 8:18-9:20; Ex. 20, Mirabal Dep. 10:14-13:21; 14:1-14.

about the time, place, and method for his deposition.[58] *See Wein*, 1995 U.S. Dist. LEXIS 21622, at *15 (noting "breakdown of communication between counsel and Plaintiff strongly suggest[ed] that the putative class would not be adequately represented"). And Counsel failed to communicate to Defendant's Counsel that Schoenbeck would be delayed by more than two hours for his deposition due to car trouble—even though Schoenbeck timely communicated that information to Counsel.[59] *Ross v. BankSouth*, N.A., Nos. CV85-PT-0444-S, CV85-PT-1044-S, 1986 U.S. Dist. LEXIS 28880, at *5 (N.D. Ala. Feb. 25, 1986) (commenting that "a plaintiff, otherwise adequate, with inadequate counsel might be determined to be an inadequate class representative").

Counsel has also failed to communicate accurate information to Plaintiffs about the facts at the heart of this lawsuit (and central to potential damages). Plaintiffs testified that the only basis for their belief that the recordkeeping fees paid to Fidelity were excessive was their Counsel.[60] Then, Plaintiffs testified that the annual per-participant recordkeeping fee was more than $100.[61] This figure is flatly contradicted by the undisputed evidence produced in the administrative process and

---

[58] Ex. 20, Mirabal Dep. 10:14-13:21; 14:1-14.
[59] Ex. 19, Schoenbeck Dep. 8:18-9:20; Appendix A, Decl. of Michelle Jackson.
[60] Ex. 19, Schoenbeck Dep. 65:20-66:3; Ex. 20, Mirabal Dep. 72:14-73:10.
[61] Ex. 19, Schoenbeck Dep. 58:14-59:4; Ex. 20, Mirabal Dep. 53:24-54:18.

during discovery.[62] Counsel's failure to ensure that Plaintiffs know basic facts about the case "casts serious doubt [on whether Counsel] will prosecute the case in the interest of the ***class***, of which they are the fiduciaries, rather than just in their interest as ***lawyers*** who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011) (citations omitted); *Garcia de León v. N.Y.U.*, No. 21 Civ 05005 (CM), 2022 U.S. Dist. LEXIS 110787, at *43 (S.D.N.Y. June 22, 2022) (where "a proposed class representative's understanding of the case is minimal, counsel's adequacy takes on ever greater importance" and the court must have "absolute confidence in counsel's competence and loyalty to the class") (citation omitted).

Second, Counsel has failed to investigate the claims in *this action*, instead continuing to assert allegations that are demonstrably untrue. *See* Fed. R. Civ. P. 23(g)(1)(A)(i) (noting the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action"). Even after the Committee provided evidence disproving Plaintiffs' allegations about float and revenue sharing,[63] Plaintiffs "ignored these facts when they appealed the

---

[62] Ex. 7, at NCR-Schoenbeck_00005816; Ex. 19, Schoenbeck Dep. 60:3-65:13, 79:2-20; Ex. 20, Mirabal Dep. 65:12-66:4; 67:14-68:8; 69:7-14.

[63] Notably, this is not the first case where Counsel's false allegations about float have been scrutinized. Defendant's Mem. in Opp. to Plaintiff's Mot. for Class

administrative decision, sued Defendant, and opposed Defendant's Motion to Dismiss." (Order on Defendant's Motion to Dismiss, Dkt. 29 at 5 (citations omitted).) Given their experience with class actions, Counsel should know that continued assertion of false allegations could disqualify them from serving as class counsel. *See Askew v. S. Pan ESOP*, No. 1:18-CV-309-MHC, 2019 U.S. Dist. LEXIS 238959, at *31-32 (N.D. Ga. June 27, 2019) (holding that repeated instances of misrepresented facts and frivolous arguments showed "a pattern of unprofessional conduct unworthy of the class they wish to represent").

Counsel's failure to investigate claims in this action calls into question their adequacy–particularly since this litigation is primarily driven by Counsel. *See Cheng Xia Wang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-840 (VSB), 2023 U.S. Dist. LEXIS 57138, at *9-10 (S.D.N.Y. Mar. 31, 2023) ("[C]lass counsel is expected to represent the class in a 'skilled and zealous' manner. At a bare minimum, this requires class counsel litigate their case without unjustified delay, complete discovery, and obey Court orders and deadlines.") (citation omitted).

---

Certification, at pp. 9-10, *McDonald v. Lab'y Corp. of Am. Holdings*, No. 1:22CV680 (M.D.N.C. Aug. 12, 2025), Dkt. 39.

## IV. The Proposed Class definition is overbroad.

Because Plaintiffs fail the Rule 23(a) requirements of typicality and adequacy, a class cannot be certified. *See Wal-Mart Stores, Inc.*, 564 U.S. at 345. To the extent the Court disagrees, however, the Proposed Class definition must be revised.

First, Plaintiffs' Proposed Class definition is overbroad, because it extends beyond ERISA's six-year statute of repose for claims of breach of fiduciary duty. 29 U.S.C. § 1113(1). The Complaint was filed on February 21, 2024. Therefore, the class period cannot begin prior to February 21, 2018—six years before this lawsuit was filed. *Ramos v. Banner Health*, 325 F.R.D. 382, 398 (D. Colo. 2018) (limiting class definition to the period six years prior to filing of complaint in accordance with 29 U.S.C. § 1113).[64] And to the extent Plaintiffs argue the six-year statute of repose should be calculated based on the filing of their complaint in *Mirabal*, the Court should reject that argument: ERISA's six-year statute of repose is not subject to tolling. *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507 (2017) (noting the "purpose of a statute of a statute of response is to create an absolute bar

---

[64] *See also, e.g.*, *Pizarro v. Home Depot, Inc.*, No. 1:18-cv-01566-WMR, 2020 U.S. Dist. LEXIS 206774, at *9 (N.D. Ga. Sep. 21, 2020) (beginning class period six years prior to filing of complaint); *Huang v. Trinet HR III Inc.*, No. 8:20-cv-2293-VMC-TGW, 2022 U.S. Dist. LEXIS 192525, at *6 (M.D. Fla. Oct. 21, 2022) (same); *Mattson v. Milliman, Inc.*, 697 F. Supp. 3d 1109, 1111 (W.D. Wash. 2023) (same); *Harmon v. Shell Oil Co.*, No. 3:20-cv-00021, 2023 U.S. Dist. LEXIS 157163, at *9 (S.D. Tex. Sep. 6, 2023) (same), *R. & R. adopted*, 2025 U.S. Dist. LEXIS 18545 (S.D. Tex. Feb. 3, 2025).

on a defendant's temporal liability" which is generally "not subject to tolling") (internal quotation marks omitted); *Fuller v. Suntrust Banks*, No. 1:11-CV-784-ODE, 2018 U.S. Dist. LEXIS 236238, at *13 (N.D. Ga. May 2, 2018) (holding six-year time bar in § 1113(1) is not subject to equitable tolling).

Second, as discussed in Section II, *supra*, the Proposed Class definition is overbroad because it encompasses participants who executed Class Action Waivers and are thus ineligible to participate in this lawsuit.[65] These participants must be excluded from any certified class. *See, e.g.*, *Hill v. T-Mobile USA, Inc.*, No. 2:09-CV-1827-VEH, 2011 U.S. Dist. LEXIS 157669 at *34 (N.D. Ala. May 16, 2011) (holding putative class members potentially ineligible due to valid class action waivers and/or agreements to arbitrate was an independently sufficient reason to deny certification); *Fennell v. Navient Sols., LLC*, No. 6:17-cv-2083-Orl-37DCI, 2019 U.S. Dist. LEXIS 141194, at *13 (M.D. Fla. June 13, 2019) (noting loans subject to arbitration provisions or class action waivers could not be certified in a single class with loans not subject to those provisions); *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 612 (S.D. Cal. 2015) (denying certification where putative class members were bound by arbitration provisions).

In the alternative, the Court has considerable discretion to modify the class definition to include subclasses. *In re Blue Cross Blue Shield Antitrust Litig. MDL*

[65] *See* Appendix B, Decl. of Millie Bennett, ¶¶ 2-4.

*2406*, 85 F.4th 1070, 1099 (11th Cir. 2023). To the extent the Court does not exclude such participants from a certified class, Defendant respectfully requests the opportunity to submit evidence supporting the dismissal of this subclass at the appropriate time.

## CONCLUSION

Defendant respectfully requests that the Court deny Plaintiffs' Motion or in the alternative, modify the class definition as requested herein.

Dated: November 10, 2025

Respectfully submitted,

/s/ *Emily S. Costin*
Emily S. Costin, admitted *pro hac vice*
**ALSTON & BIRD LLP**
950 F. Street, N.W.
Washington, D.C. 20004-1404
(202) 239-3300
(202) 239-3333
emily.costin@alston.com

R. Blake Crohan
Georgia Bar Number 512642
Michelle Jackson
Georgia Bar Number 404426
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
(404) 881-7000
(404) 881-7777 (fax)
Blake.crohan@alston.com
Michelle.jackson@alston.com

*Attorneys for Defendant NCR Voyix Plan Administration Committee*

## CERTIFICATE OF SERVICE AND TYPE-SIZE COMPLIANCE

Pursuant to LR 5.1C, N.D. Ga., the foregoing pleading is prepared in Times New Roman font, 14 point, and I hereby certify that the foregoing DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION was filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record.

Dated: November 10, 2025

/s/ *Emily S. Costin*

Emily S. Costin, admitted *pro hac vice*
**ALSTON & BIRD LLP**
950 F. Street, N.W.
Washington, D.C. 20004-1404
(202) 239-3300
(202) 239-3333
emily.costin@alston.com

*Attorney for Defendant NCR Voyix Plan Administration Committee*