IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ALAN SCHOENBECK, et al.,** | |
| **Plaintiffs,** | **CIVIL ACTION FILE** |
| **v.** | **No. 1:24-CV-00765-SCJ** |
| **NCR CORPORATION PLAN ADMINISTRATION COMMITTEE,** | |
| **Defendant.** | |

# ORDER

This matter appears before the Court on Plaintiffs' Motion to Certify Class. Doc. No. [48].[1] Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). Plaintiffs request that the Court certify their proposed class, appoint them as the class representatives, and select their attorneys as class counsel. After review of the record, the Court rules as follows.

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers referenced are those imprinted by the Court's docketing software.

## I. BACKGROUND

Plaintiffs are former participants of the NCR Savings Plan (the "Plan"). Plaintiffs bring suit under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), alleging that Defendant breached its fiduciary duty by imprudently paying excessive recordkeeping fees. Plaintiffs seek certification of a class comprised of "[a]ll persons who were participants in or beneficiaries of the NCR Savings Plan from January 31, 2024, through February 23, 2017." Doc. No. [51], 19.[2]

## II. LEGAL STANDARD

"The district court has broad discretion in determining whether to certify a class." Monroe Cty. Emps.' Ret. Sys. v. S. Co., 332 F.R.D. 370, 377 (N.D. Ga. 2019) (quoting Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir. 1992)). "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." Little v. T-Mobile USA,

---

[2] The Court notes that Plaintiffs originally proposed a class comprised of "[a]ll persons who were participants in or beneficiaries of the NCR Savings Plan from December 13, 2016, through the present." Doc. No. [48], 1. The original putative class has been limited by the narrower class definition Plaintiffs have provided in their Reply. Doc. No. [51], 19; see Saenz v. Old Dominion Freight Line, Inc., No. 1:18-CV-4718, 2019 WL 6622840, at *2 (N.D. Ga. June, 7, 2019) ("[Plaintiff] has slightly narrowed the class [in his reply] . . . . The Court does not deem this improper.")

Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted). "If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then establish the four requirements listed in Federal Rule of Civil Procedure 23(a)" and "at least one of the three requirements listed in Rule 23(b)." Id.

Rule 23(a) requires Plaintiff to establish that:

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy. Sellers v. Rushmore Loan Mgmt. Servs., LLC, 941 F.3d 1031, 1039 (11th Cir. 2019).

Next, Plaintiffs seek certification pursuant to Rule 23(b)(1) (Doc. No. [48-1], 23–24), which requires a showing that prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other

> members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). "Plaintiffs, as the party seeking class certification, must demonstrate by a preponderance of the evidence that the putative class meets the requirements of Rule 23." Monroe, 332 F.R.D. at 377. The Court is required to perform a "rigorous analysis" of the Rule 23 elements. Id.

## III. ANALYSIS

### A. Standing

"[A]ny analysis of class certification must begin with the issue of standing." Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987). In an ERISA case, a plaintiff must have both statutory and Article III standing for each type of relief sought. Gamache v. Hogue, 338 F.R.D. 275, 283 (M.D. Ga. 2021) ("Under ERISA, plaintiffs must have both statutory and constitutional standing.").

In the present matter, Plaintiffs have statutory standing as they were Plan participants. Id. ("A plaintiff has statutory standing by being a plan participant . . . ."). Yet, Defendant challenges Plaintiffs' Article III standing to the extent that Plaintiffs seek prospective relief, because Plaintiffs, as former Plan participants, "face no danger of future injury or potential harm from . . . [a] current or future aspect of Plan administration." Doc. No. [50], 19. Plaintiffs

concede this point, agreeing that they lack standing to pursue prospective relief. Doc. No. [51], 6. Plaintiffs, however, point out that they have standing to pursue retroactive relief, and agree to narrow their class definition to only request such relief. Id.; see Garthwait v. Eversource Energy Co., No. 3:20-CV-0902, 2022 WL 1657469, at *6 (D. Conn. May 25, 2022) ("[S]ection 502(a)(2) of ERISA authorizes derivative suits on behalf of defined contribution plans for retrospective equitable relief to make the plan whole."). Although Plaintiffs lack standing to pursue prospective relief, they do have standing to seek to recover for the Plan losses. Therefore, because Plaintiffs have agreed to narrow their proposed class to seek only retroactive relief, they have both statutory and Article III standing.

**B. Rule 23(a)**

***1. Numerosity***

Rule 23(a)(1) requires a showing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Courts consider several factors in determining whether joinder is practicable, including the size of the class, the nature of the action, the size of each members' claim, and their geographical dispersion." Henderson, 2018 WL 6332343, at *4 (citing United

Steelworkers of Am., AFL-CIO-CLC v. Ivaco, Inc., 216 F.R.D. 693, 696 (N.D. Ga. 2002)).

Defendant does not contest numerosity. Doc. No. [50]. Plaintiffs allege that the plan had at least 15,000 participants throughout the proposed class period. Doc. Nos. [48]; [51].[3] This number of potential class members satisfies the numerosity requirement. See United Steelworkers of Am., AFL-CIO-CLC, 216 F.R.D. at 696–97 (finding that a class of 504 retirees in an ERISA action were sufficiently numerous); see also Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (holding that, while there is no fixed numerosity rule, classes of more than forty are presumptively adequate).

2. *Commonality*

Rule 23(a)(2) requires movants to show that "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy commonality, the claims must depend on a common contention "of such a nature that it is

[3] The 15,000 estimate in Plaintiffs' Motion for Class Certification is still applicable to Plaintiffs' narrower class definition found in their Reply. Plaintiffs narrowed the putative class to Plan participants from January 31, 2024 to February 23, 2017. Doc. No. [51], 6. The number of participants during this period satisfies the numerosity requirement. For example, the Plan's 2022 Form 5500 reports that there were 17,163 participants at the beginning of the plan year. Doc. No. [48-9], 3.

capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Carriuolo v. Gen. Motors Co., 823 F.3d 977, 984 (11th Cir. 2016) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). Commonality "'does not require that all the questions of law and fact raised by the dispute be common,' or that common questions of law or fact 'predominate' over individual issues." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1268 (11th Cir. 2009) (citation omitted) (quoting Cox, 784 F.2d at 1557). Rather, "even a single common question will do." Carriuolo, 823 F.3d at 984 (quoting Dukes, 564 U.S. at 359).

Defendant does not contest commonality. Doc. No. [50]. Moreover, Plaintiffs' claims present a number of questions common to the proposed class. These include: (1) whether Defendant is a fiduciary to the Plan; (2) whether Defendant breached its fiduciary duties; (3) whether the Plan suffered losses; (4) how to calculate those losses, if any; and (5) what relief is appropriate. These are questions capable of class-wide resolution, as other courts have found. See Henderson, 2018 WL 6332343, at *5 (listing the same questions found above). Therefore, Plaintiffs have satisfied the commonality requirement.

*3. Typicality*

Rule 23(a)(3) requires that the class representative's claims or defenses be "typical" of the claims or defenses of the putative class. Fed. R. Civ. P. 23(a)(3). While the "commonality and typicality requirements of Rule 23(a) tend to merge," Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982), typicality centers on "the individual characteristics of the named plaintiff in relation to the class." Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001). "A plaintiff satisfies typicality by showing that the claims or defenses 'arise from the same event or pattern or practice and are based on the same legal theory.'" Henderson, 2018 WL 6332343, at *5 (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984)).

Defendant argues that Plaintiff Mirabal is not typical of the class because he signed a Class Action Waiver, a condition imposed on all newly hired NCR employees starting in 2018. Doc. No. [50], 20–21. Defendant contends that this is a unique defense that is likely to become a major focus of the litigation, precluding a finding of typicality as to Plaintiff Mirabal. Id. at 21. Conversely, in respect to Plaintiff Schoenbeck, Defendant argues the inverse—that because Plaintiff Schoenbeck did not sign a Class Action Waiver, "he is not typical of the

thousands of putative class members who did." Id. Plaintiffs counter that "[c]lass action waivers are not enforceable in ERISA cases like this," and as such, "they have no bearing on Plaintiffs' typicality as class representatives." Doc. No. [51], 7.

The Court looks to the enforceability of the Class Action Waiver. "The effective vindication doctrine invalidates arbitration provisions that prospectively waive 'a party's right to pursue statutory remedies.'" Williams v. Shapiro, 161 F.4th 1313, 1318 (11th Cir. 2025) (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013)). "The key question is whether 'the prospective litigant effectively may vindicate its statutory cause of action . . . .'" Id. at 1318–19 (quoting Am. Express Co., 570 U.S. at 235). In the present matter, the Class Action Waiver specifies, in relevant part, that

> To the maximum extent permitted by law: (i) all claims under this Agreement must be brought in each Party's individual capacity, and not as a plaintiff or class member in any purported class, collective or representative proceeding; (ii) no claims may be brought or maintained on a class, collective or representative basis either in Court or in arbitration, notwithstanding the rules of the arbitral body; (iii) such claims will be decided on an individual basis in arbitration pursuant to this Agreement; and (iv) the Parties expressly waive any right with respect to any covered claims to submit, initiate, or participate as a plaintiff, claimant or member in a class action or collective action, regardless of whether the action is filed in arbitration or in court. Claims may not be joined or

> consolidated in arbitration with disputes brought by or against other individual(s), unless agreed to in writing by the Parties (you, NCR, and the other individual(s) or entities).

Doc. No. [50-16], 14. The Court must analyze whether the Class Action Waiver functions as a waiver of statutory rights granted by ERISA. Establishing liability for breaches of fiduciary duty, 29 U.S.C. § 1109(a) provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

"ERISA expressly provides that plan participants may bring a civil action for relief under § 1109." Williams, 161 F.4th at 1321 (citing 28 U.S.C. § 1132(a)). "Thus, ERISA provides for 'plan-related relief.'" Id. (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985)).

Here, the Class Action Waiver is unenforceable "because § 1109(a) 'provides relief singularly to the plan rather than an individual plaintiff,' and § 1132(a)(2) 'claims are understood as claims brought in a representative capacity on behalf of the plan as a whole.'" Id. (internal quotation marks omitted) (quoting Platt v. Sodexo, S.A., 148 F.4th 709, 721 (9th Cir. 2025)). The Class Action Waiver

explicitly prohibits claims "brought or maintained on a class, collective or representative basis either in Court or in arbitration" and specifies that "all claims . . . must be brought in each Party's individual capacity." Doc. No. [50-16], 13. Therefore, the Class Action Waiver is unenforceable as a prospective waiver of a statutory right under ERISA. See Williams, 161 F.4th at 1322 ("We conclude that the Arbitration Procedure's preclusion of ERISA statutory claims brought 'in a representative capacity,' for relief which benefits anyone other than the individual claimant, prevents the plaintiffs from effectively vindicating §§ 1109(a) and 1132(a)(2) in the arbitral forum.").

Because the Class Action Waiver is unenforceable, it has no bearing on the typicality analysis. Here, Plaintiffs claims or defenses are typical of the claims or defenses of the class. The claims of all members of the class center on the same conduct and legal theory: Defendant's alleged breach of its fiduciary duty by paying excessive recordkeeping fees. Accordingly, because Plaintiffs have shown that the claims arise from the same practice and are based on the same legal theory, they have satisfied the typicality requirement.

### 4. *Adequacy*

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court applies a two-prong test for adequacy: "(1) whether any substantial conflicts of interest exist between the representatives of the class; and (2) whether the representatives will adequately prosecute the action." Valley Drug Co. v. Geneva Pharms., Inc., 350 F.2d 1181, 1189 (11th Cir. 2003).

#### i. **Intra-Class Conflicts**

While "[m]inor conflicts alone are insufficient to defeat adequacy," Owens v. Metro. Life Ins. Co., 323 F.R.D. 411, 418 (N.D. Ga. 2017), a "fundamental" conflict is fatal. Valley Drug Co., 350 F.3d at 1189. "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." Id. On the other hand, a conflict is not "fundamental" when "all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability

of defendants." Owens, 323 F.R.D. at 418 (quoting Ward v. Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010)).

Here, Plaintiffs have attested that there were no substantial conflicts of interest between them and the other class members. Doc. No. [51], 16. Moreover, Defendant does not argue that any such conflicts exists. Doc. No. [50]. Thus, Plaintiffs meet the first adequacy prong.

**ii. Adequate Prosecution**

Defendant's arguments against adequacy focus on the alleged lack of adequate prosecution by Plaintiffs.[4] Doc. No. [50], 22–29. Specifically, Defendant alleges that Plaintiffs' "blind reliance" on counsel renders them inadequate representatives and that Class Counsel themselves are incapable of fairly and adequately representing the interests of the putative class. Id.

Turning to Defendant's first contention, a potential class is indeed entitled to "more than blind reliance upon even competent counsel by uninterested and

---

[4] Defendant also challenges Plaintiffs' adequacy on similar grounds as their standing. Specifically, Defendant argues that Plaintiffs, as former Plan participants, cannot adequately protect the interests of current Plan participants. Doc. No. [50], 11. This argument is unpersuasive. Rule 23(a)(4) concerns whether the "representative parties will fairly and adequately protect the interests *of the class*." Fed. R. Civ. P. 23(a)(4) (emphasis added). As Plaintiffs have narrowed their class to those seeking retroactive relief, the adequacy analysis centers on whether Plaintiffs can adequately represent the interests of that class, not of any current Plan participant seeking prospective relief.

inexperienced representatives." Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 727 (11th Cir. 1987) (quoting In re Goldchip Funding Co., 61 F.R.D. 592, 594 (M.D. Pa. 1974)). This is because "where the named plaintiffs 'have abdicated their role in the case beyond that of furnishing their names as plaintiffs,' the attorneys, in essence, are the class representative." Id. (quoting Helfand v. Cenco, 80 F.R.D. 1, 7–8 (N.D. Ill. 1977)). However, adequacy "generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." Id. In fact, "[i]nadequacy for a plaintiff's lack of involvement or awareness is rare," Henderson, 2018 WL 6332343, at *6, with denial of certification taking place where plaintiffs demonstrate "so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interest of the attorneys." Kirkpatrick, 827 F.2d at 727.

Here, Plaintiffs have responded to discovery requests, been deposed, and submitted affidavits swearing to vigorously participate in the prosecution of this suit on behalf of the class. Doc. Nos. [48-22], ¶ 6; [48-23], ¶ 6. Nevertheless, Defendant contends that Plaintiffs "blindly rely" on counsel because Plaintiffs did not independently verify the accuracy of the First Amended Complaint and

that they possess inadequate knowledge concerning the recordkeeping fees and the facts underlying this matter. Doc. No. [50], 24. However, "ERISA itself represents a highly dense regulation, and claims arising from it are equally complex. That a plaintiff might not fully understand the facts and legal theories of this complex ERISA action is understandable." Henderson, 2018 WL 6332343, at *7; see also Pizarro, 2020 WL 6939810, at *11 ("In a complex case, such as this, which requires a 'great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case.'" (quoting Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 430 (4th Cir. 2003))).

Although Plaintiffs' deposition testimony demonstrates confusion regarding the recordkeeping fees, Plaintiffs' involvement in the discovery process, their deposition participation, and their sworn statements show that they are willing and able to serve as class representatives. See Pizarro, 2020 WL 6939810, at *11 (finding that class representatives were adequate where they "responded to discovery requests, appeared for depositions, and submitted affidavits attesting to their participation in [the] action and their willingness to pursue their case vigorously." (citations omitted)). Therefore, because Plaintiffs

have not "blindly relied" on counsel, the Court finds that Plaintiffs are adequate representatives.

Defendant also challenges the adequacy of Class Counsel. Doc. No. [50], 26. Defendant clarifies that it "does not challenge the credentials or experience of Counsel," but rather questions Counsel's conduct. Id. Specifically, Defendant argues that Counsel failed to notify Plaintiff Mirabel about the time, place, and method for his deposition which caused the deposition to be rescheduled, and for failing to inform Defendant's counsel that Plaintiff Schoenbeck was running late due to car troubles. Id. Additionally, Defendant points to Plaintiffs' confusion regarding the recordkeeping fees as evidence of "Counsel failing to communicate accurate information to Plaintiffs" and state that Counsel also "continu[es] to assert allegations that are demonstrably untrue." Id. at 27–28.

Rule 23(g)(1) provides that, in appointing class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The contentions raised by Defendant do not establish that Counsel is inadequate. Counsel is highly qualified and has extensive experience in litigating ERISA class action lawsuits. Doc. Nos. [48-24], ¶ 4; [48-25], ¶ 6; [48-26], ¶ 9; [48-27], ¶ 7; [48-28], ¶ 6. Counsel has actively litigated this matter, including evaluating the claims, preparing pleadings, and participating in the discovery process. Accordingly, Plaintiffs have demonstrated that they and their counsel will adequately prosecute the action.

**C. Rule 23(b)(1)**

Having found that the Plaintiffs satisfy each element of Rule 23(a), the Court's analysis now turns to whether Plaintiffs meet one of the requirements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(1). Doc. No. [48-1], 23–24. Courts in the Eleventh Circuit often find certification pursuant to Rule 23(b)(1) appropriate in ERISA breach of fiduciary duty actions. See Pizarro, 2020 WL 6939810, at *11; Henderson, 2018 WL 6332343, at *10; Gamache v. Hogue, 338 F.R.D. 275, 291–92 (M.D. Ga. 2021); Agnone v. Camden Cnty, Ga., No. 2:14-cv-0024, 2019 WL 1368634, at *7 (S.D. Ga. Mar. 26, 2019).

Rule 23(b)(1) permits certification in two scenarios. First, pursuant to Rule 23(b)(1)(A), where separate actions by individual class members creates a risk of

"inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). And second, under Rule 23(b)(1)(B), when individual adjudications "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).

First, the class meets the requirements of Rule 23(b)(1)(A). Here, Plaintiffs allege that Defendant breached its fiduciary duty to the Plan, and thus to all former participants of the plan during the defined period. Doc. No. [48-1], 30. This alleged breach goes to all class members alike. Adjudicating these claims for the several thousand Plan participants individually could very likely result in conflicting and incompatible standards of conduct for Defendant. Therefore, Plaintiffs satisfy Rule 23(b)(1)(A).

Second, the class also meets the requirements of Rule 23(b)(1)(B). "In light of the derivative nature of ERISA [Section] 502(a)(2) claims, breach of fiduciary duty claims brought under [Section] 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." Henderson, 2018 WL 6332343, at *9 (alteration in original) (quoting

In re Suntrust Banks, Inc. ERISA Litig., No. 1:08-CV-03384, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016). Here, the breach of fiduciary duty claims, by their very nature, would affect Plan participants that were not involved in an individual action. Id. at *10 ("[B]ecause the fiduciary claims are brought on behalf of the Plans, individual adjudication would necessarily affect—or "be dispositive of the interests of"—plan participants absent from that individual action, or otherwise 'would substantially impair or impede their ability to protect their interests' as participants in the Plans." (quoting Fed. R. Civ. P. 23(b)(1)(B))). Therefore, Plaintiffs' ERISA breach of fiduciary duty claims are certifiable under Rule 23(b)(1)(B).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Certify Class. Doc. No. [48]. The class will be defined as: All persons who were participants in or beneficiaries of the NCR Savings Plan from January 31, 2024, through February 23, 2017.

The Plaintiffs, Jorge Mirabal and Alan Schoenbeck, are hereby appointed as class representatives. The Court appoints Wenzel Fenton Cabassa, P.A.; Morgan & Morgan, P.A.; and McKay Law, LLC as class counsel.

**IT IS SO ORDERED** this 10th day of September, 2026.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE